# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:  SQUAW VALLEY DEVELOPMENT COMPANY | Civil Action No. _____ |
| | **COMPLAINT** |

SQUAW VALLEY DEVELOPMENT COMPANY,

1960 Squaw Valley Road, Olympic Valley, CA 96146

                      Plaintiff,

          v.

JON W. DUDAS, UNDERSECRETARY OF COMMERCE FOR INTELLECTUAL PROPERTY AND DIRECTOR OF THE UNITED STATES PATENT TRADEMARK OFFICE,

United States Patent and Trademark Office
Madison Building East, Room 10B20
600 Dulany Street
Alexandria, VA 22314

                    Defendant.

Plaintiff Squaw Valley Development Company ("Squaw Valley"), by its attorneys Winston & Strawn LLP, for its Complaint alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff Squaw Valley is one of the most famous ski resorts in the world and the site of the 1960 Winter Olympic Games.   For nearly six (6) decades, Plaintiff and its predecessor-in-interest have used the famous marks SQUAW VALLEY® and SQUAW. Plaintiff's federal trademark registration portfolio for its SQUAW VALLEY® marks dates back nearly fifty (50) years.  In furtherance of its long-established trademark protection program and federal registration portfolio, Plaintiff filed applications in 2003 to register its marks SQUAW (Serial No. 76/511,144) and SQUAW ONE (Serial No. 76/511,145), which were initially refused registration based on  Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a).  In 2005, the Trademark Trial and Appeal Board of the United States Patent & Trademark Office ("TTAB") concluded that the record contained "no evidence" that Plaintiff's SQUAW and SQUAW ONE marks violated Section 2(a) and thus were entitled to registration.  This action seeks a *de novo* review, pursuant to 15 U.S.C. § 1071(b), of the TTAB's 2006 decision which abruptly and erroneously reversed its earlier decision that Plaintiff is entitled to registration of its SQUAW and SQUAW ONE marks. As detailed below, the TTAB erred as a matter of law in issuing its 2006 decision refusing registration of Plaintiff's SQUAW and SQUAW ONE marks.


2.      Plaintiff seeks an Order from this Court: (1) reversing the TTAB decision denying registration of Plaintiff's marks SQUAW and SQUAW ONE; and (2) declaring that the terms SQUAW and SQUAW ONE, as marks identifying the source of Plaintiff's ski resort services and related goods and services, do not consist of or comprise matter which may disparage Native Americans or otherwise may violate Section 2(a) of the Lanham Act.

2

## PARTIES

3.      Plaintiff Squaw Valley Development Company is a corporation organized and existing under the laws of the State of California, having its principal place of business at 1960 Squaw Valley Road, Olympic Valley, California 96146.

4.      Upon information and belief, the TTAB is an administrative agency of the United States government, having its principal place of business in Alexandria, Virginia.

## JURISDICTION AND VENUE

5.      This is a civil action arising under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, in that the TTAB's decision refusing to register Plaintiff's marks SQUAW and SQUAW ONE pursuant to 15 U.S.C. § 1052(a) in connection with certain goods and services is erroneous, arbitrary and capricious, and a violation of the Due Process Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution.

6.      This Court has subject matter jurisdiction pursuant to 15 U.S.C. §§ 1071(b)(1) and (4), which provides that a party dissatisfied with a decision of the TTAB may institute a new civil proceeding challenging such decision.  The Court also has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201.

7.      Venue is proper in this judicial district under 28 U.S.C. § 1391(b) in that all of the events giving rise to the claim occurred in this judicial district.

3

## PLAINTIFF'S SQUAW VALLEY® FAMILY OF MARKS

8.      Plaintiff is the owner of the world famous SQUAW VALLEY® resort, the home of the 1960 Winter Olympic Games.  Since the 1940's, Plaintiff and its predecessor-in-interest have used the marks SQUAW and SQUAW VALLEY® in connection with ski resort services and ski-related goods and services.  Copies of representative examples of use of Plaintiff's SQUAW VALLEY® marks for its ski resort services and related goods and services are attached hereto as Exhibit 1.

9.      Plaintiff uses its SQUAW, SQUAW ONE, and SQUAW VALLEY® marks in connection with ski-related apparel, equipment, and retail services.

10.     Plaintiff is the longtime federal registrant of marks incorporating the term "SQUAW" for ski resort services and related goods and services.  Plaintiff's earliest registration for SQUAW VALLEY® dates back to 1958.  Plaintiff has a long history of registering its SQUAW VALLEY® family of marks before the USPTO.

11.     Plaintiff owns the following U.S. trademark registrations for its SQUAW VALLEY® family of marks:

| Mark | U.S. Reg. No. | Reg. Date | Recitation of Goods and Services |
|---|---|---|---|
| SQUAW VALLEY (Stylized) | Reg. No. 670,261 | 11/25/58 | women's, men's, girls', and boys' jackets, pants, and sweaters in class 25 |
| SQUAW VALLEY USA | Reg. No. 1,645,155 | 5/21/91 | jewelry, namely pins, rings and bracelets in class 14; brochures, pamphlets, booklets relating to vacation planning, ski guides, ski school materials, recreation |

4

| Mark | U.S. Reg. No. | Reg. Date | Recitation of Goods and Services |
|---|---|---|---|
| | | | planning, plastic bags, in class 16; |
| | | | furniture, ornamental novelty buttons, in class 20; |
| | | | mugs, cups, plates, and glass beverageware, corkscrews, cups, mugs, plates made of plastic in class 21; |
| | | | towels, textile wallhangings and banners, in class 24; |
| | | | skis, poles, ski bindings, ski tuning kits containing waxes and adjustment tools, skit equipment, namely power cords, in class 28; |
| | | | matches, ashtrays in class 34 |
| SQUAW VALLEY USA | Reg. No. 2,115,036 | 11/25/97 | textile goods, namely bed blankets, in class 24; |
| | | | men's women's clothing and accessories, namely jackets, sweatshirts, caps, bathrobes, t-shirts, gloves, head bands, vests, hats and fleece-wear, namely ski caps; children's clothing and accessories, namely, t-shirts, sweatshirts, baseball caps, bathrobes and gloves, in class 25 |
| SQUAW VALLEY USA | Reg. No. 1,628,589 | 12/18/90 | real estate management in class 36; |
| | | | limousine, bus and transportation services in class 39; |
| | | | providing recreational facilities for and instructions in skiing, golf, tennis, swimming, operating a ski lift, aerobics and other forms of exercise in class 41; |
| | | | hotel, restaurant and lounge services, retail grocery services in class 42 |
| SQUAW VALLEY USA | U.S. Reg. No. 2,269,300 | 8/10/99 | leather goods and imitation leather goods, namely luggage, travel bags and umbrellas in class 18 |

12.    Each of the above-listed registrations is incontestable pursuant to 15 U.S.C. § 1065. Copies of the certificates of registration for the foregoing registrations are attached hereto as Exhibit 2.

13.    Plaintiff is also the owner of the internet domain name <www.squaw.com>. A copy of the registration for the foregoing domain name is attached hereto as Exhibit 3.

14.    As a result of its longtime use, extensive advertising and promotion, and tremendous unsolicited publicity received, Plaintiff has established a family of SQUAW VALLEY® marks over the past six (6) decades. Copies of representative examples of publicity received relating to Plaintiff's SQUAW VALLEY® ski resort goods and services are attached hereto as Exhibit 4.

15.    Plaintiff's SQUAW VALLEY® marks are famous, well-known, distinctive, and recognized by skiing enthusiasts, winter sports fans, and the public at large.

## PROSECUTION HISTORY OF PLAINTIFF'S "SQUAW" AND "SQUAW ONE" TRADEMARK APPLICATIONS

16.    Plaintiff repeats and realleges the allegations contained in Complaint paragraphs 1 through 15, inclusive, as though fully set forth herein.

17.    On May 2, 2003, Plaintiff filed applications in the USPTO for the registration of two marks, SQUAW (Serial No. 76/511,144) and SQUAW ONE (Serial No. 76/511,145) for men's, women's, and children's clothing and accessories, namely jackets, sweatshirts, sweaters,

shirts, pants, bathrobes, t-shirts, gloves, head bands, vests, and hats in Classes 25; skis, ski poles, ski bindings, ski tuning kits comprised of waxes and adjustment tools, ski equipment, namely, power cords in Class 28; and retail store services in the field of sporting goods and equipment, apparel for men, women and children, footwear, headgear and related goods and services in Class 35.  Copies of the foregoing applications are attached hereto as Exhibit 5.

18.    On November 13, 2003, Kathleen de Jonge, a Trademark Examiner for the USPTO, issued an office action against Plaintiff's application for SQUAW ONE (Serial No. 76/511,145).  A copy of the office action dated November 13, 2006 is attached hereto as Exhibit 6.

19.    On November 18, 2003, Kathleen de Jonge issued an office action against Plaintiff's application for SQUAW (Serial No. 76/511,144).  A copy of the office action dated November 18, 2006 is attached hereto as Exhibit 7.  The office actions issued by the Examiner against the applications for SQUAW and SQUAW ONE are substantially identical with respect to the issues presented under 15 U.S.C. § 1052(a).

20.    Initially, the Examiner refused registration of both the SQUAW and SQUAW ONE marks on the basis that the marks allegedly "consist of or comprises matter which may disparage American Indians (sic) or bring them into contempt or disrepute" under Section 2 of the Lanham Act, 15 U.S.C. § 1052(a), notwithstanding Plaintiff's long-established registration portfolio for its SQUAW VALLEY® marks.  See Exhibits 6-7 attached hereto.  In support of the refusals, the Examiner included three excerpts from dictionary and encyclopedia entries for the

term SQUAW which contained editorial comments to the effect that SQUAW can be considered offensive or disparaging.

21.     On May 11, 2004, Plaintiff responded to the office action issued against its application for SQUAW ONE.  A copy of Plaintiff's response dated May 11, 2004 is attached hereto as Exhibit 8.

22.     On May 18, 2004, Plaintiff responded to the office action issued against its application for SQUAW.  A copy of Plaintiff's response dated May 18, 2004 is attached hereto as Exhibit 9.

23.     In Plaintiff's responses to the office actions, Plaintiff refuted the Examiner's claims, arguing that the primary significance of Plaintiff's mark SQUAW, as used in connection with the goods and services at issue, related to its famous SQUAW VALLEY® resort and the mark SQUAW functioned as a short hand reference to Plaintiff's famous SQUAW VALLEY® resort.   In support of this argument, Plaintiff submitted Internet and dictionary evidence reflecting that the term SQUAW referred to Plaintiff's famous SQUAW VALLEY® resort, was not used in a pejorative fashion, and had no such implication, contrary to the claim of the Examiner.

24.     On July 8, 2004, the Examiner issued final refusals against Plaintiff's applications for SQUAW and SQUAW ONE, reiterating the claim that Plaintiff's use of SQUAW allegedly had a direct association with the alleged pejorative meaning.  The Examiner also cited the same

three dictionary and encyclopedia references attached to the first office actions, a number of articles from the Lexis database containing commentary by a handful of Native American Indian Movement activists regarding use of the term SQUAW, and several articles regarding legislation or proposed legislation in a handful of states banning the use of the term SQUAW in geographical place names. Copies of the final refusals dated July 8, 2004 are attached hereto as Exhibit 10.

25.    On November 9, 2004, Plaintiff sought reconsideration of the Examiner's final refusals.    In support of Plaintiff's position, Plaintiff submitted Lexis articles establishing conclusively that the term SQUAW is a well-known shorthand reference used for Plaintiff's famous SQUAW VALLEY® resort.    Copies of Plaintiff's November 9, 2004 requests for reconsideration are attached hereto as Exhibit 11.    As the identical set of exhibits was used in both requests for reconsideration, a single copy of the exhibits is attached hereto.

26.    On December 28, 2004, the Examiner rejected reconsideration of the final refusal of both applications, and referred to additional Internet references regarding pending legislation proposing to ban use of the term SQUAW in geographic place names, and commentary by the same handful of North American Indian Movement activists regarding the alleged pejorative nature of the term SQUAW.    Copies of the December 28, 2004 continuations of the final refusals are attached hereto as Exhibit 12.

27.   On January 10, 2005, Plaintiff appealed the Examiner's final refusals to the TTAB, as permitted under TMEP § 1501, 15 U.S.C. 1070, 37 C.F.R. 2.141.  Copies of Plaintiff's January 10, 2005 notices of appeal are attached hereto as Exhibit 13.

28.   On September 26, 2005, the TTAB issued a decision reversing the Examiner's refusals to register SQUAW and SQUAW ONE, in all three classes of goods and services applied for, namely, in Classes 25, 28, and 35 (ski-related equipment, apparel, and retail store services).  A copy of the TTAB opinion dated September 26, 2005 is attached hereto as Exhibit 14.

29.   In its decision of September 26, 2005, the TTAB utilized the two-prong evidentiary test set forth in *Harjo v. Pro-Football Inc.*, 50 USPQ2d 1705 (TTAB 1999), *rev'd on other grounds*, 284 F. Supp. 2d 96, 68 U.S.P.Q.2d 1225 (D.D.C. 2003), *remanded*, 415 F.3d 44, 75 U.S.P.Q.2d 1525 (D.C. Cir. 2005), ("*Harjo*") to determine whether a term is disparaging within the meaning of 15 U.S.C. 1052(a).  The *Harjo* test requires the TTAB to determine: (i) first, "what is the likely meaning of the matter in question, taking into account not only dictionary definitions, but also the relationship of the matter to other elements in the mark, the nature of the goods or services, and the manner in which the mark is used in the marketplace in connection with the goods and services"; and "if that meaning is found to refer to identifiable persons, institutions, beliefs of national symbols", then (ii) secondly whether that meaning may be disparaging to a substantial composite of the referenced group".  See Exhibit 14 attached hereto at page 9.

10

30.    In applying the *Harjo* test, the TTAB reached different conclusions with respect to the different classes applied for, but the end result was the same, namely, that Plaintiff is entitled to registration of SQUAW and SQUAW ONE in all three classes. Id. at 31.

31.    With respect to Plaintiff's applications for SQUAW and SQUAW ONE in Class 28 (ski equipment and related goods), the TTAB concluded that the likely meaning of Plaintiff's use of the marks SQUAW and SQUAW ONE was Plaintiff's famous SQUAW VALLEY® resort, and not the dictionary definition of the term SQUAW. Id. at 20.

32.    With respect to Plaintiff's applications for SQUAW and SQUAW ONE in Classes 25 and 35 (apparel and retail store services), the TTAB concluded that the likely meaning of Plaintiff's use of the marks SQUAW and SQUAW ONE was the dictionary definition of SQUAW and not Plaintiff's famous SQUAW VALLEY® resort. Id. at 19. The TTAB then applied the second prong of the *Harjo* test solely with respect to Classes 25 and 35, and concluded as follows:

> Applicant is correct -- there is <u>no evidence in the record</u> that a substantial composite of Native Americans find applicant's use of its marks on its identified goods and services disparaging.
>
> . . . .
>
> The evidence submitted by the examining attorney does not establish whether a substantial composite of Native Americans find applicant's use of SQUAW in its marks on applicant's identified goods and services to be disparaging.

Id. at 29-30 (emphasis added).

33.    On October 25, 2005, a petition for reconsideration of the TTAB's September 26, 2005 decision (the "2005 Opinion"), was filed by Michael Baird, the Senior Examining Attorney

assigned to this case for purposes of the reconsideration. The petition for reconsideration cited three alleged points of error: (i) the TTAB misapplied the second prong of the *Harjo* test with respect to the goods and services in Classes 25 and 35 (apparel and retail store services) by analyzing the second prong in the context of the goods and services at issue; (ii) the TTAB incorrectly applied an *inter partes* standard of proof to this *ex parte* appeal; and (iii) the TTAB incorrectly analyzed the evidence relating to the first prong of the *Harjo* test in connection with Class 28 (apparel). A copy of the Senior Examiner's October 25, 2005 request for reconsideration is attached hereto as Exhibit 15.

34.    On November 14, 2005, Plaintiff responded to the Senior Examiner's request for reconsideration. A copy of Plaintiff's November 14, 2005 Reply is attached hereto as Exhibit 16.

## ERRORS IN THE TTAB'S 2006 OPINION

35.    On May 30, 2006, the TTAB issued an opinion (the "2006 Opinion") reversing its earlier 2005 Opinion solely with respect to Plaintiff's right to register the marks SQUAW and SQUAW ONE in connection with Classes 25 and 35 (apparel and retail store services) on the sole ground that the 2005 Opinion applied an incorrect evidentiary standard for an *ex parte* appeal, the second point of error alleged by the Senior Examiner. A copy of the 2006 Opinion is attached hereto as Exhibit 17.

36.    Specifically, the TTAB found that it had previously failed to take into account the Examiner's limited resources and ability to gather evidence and determined that the evidence of record provided by the Examiner met an unspecified and "lowered" standard of proof, which the

TTAB claimed applies to evidence submitted by Examiners in *ex parte* proceedings only. See Exhibit 17 attached hereto. Given that the TTAB had previously applied the proper *ex parte* standard in its 2005 Opinion, the new standard used in its 2006 Opinion constitutes an unprecedented lowered standard. In effect, the TTAB ruled that the Examiner's evidence is subject to a third tier standard of proof, notwithstanding that the TTAB had previously found in its 2005 Opinion that there "is no evidence in the record that a substantial composite of Native Americans find applicant's use of its marks on the identified goods and services disparaging". See Exhibit 14 attached hereto at page 29 (emphasis added).

37.    With respect to the second prong of *Harjo*, in the 2006 Opinion, the TTAB stated that in its earlier ruling it found that there "is no evidence in the record that a substantial composite of Native Americans find applicant's use of its marks on the identified goods and services disparaging", but that it had failed to consider whether the Examiner met the USPTO's burden by "extrapolating from the evidence of record that a substantial composite of Native Americans find applicant's use of the term SQUAW in its marks on the identified goods and services disparaging." See Exhibit 17 attached hereto at page 19. Under the TTAB's newly lowered standard of proof, the TTAB then went on to hold that it can "infer from the evidence about the generally offensive nature of the term when meaning a Native American woman or wife that the term is offensive no matter what the goods or services it is used." See Exhibit 17 attached hereto at page 34. The TTAB's ability to "infer" from the evidence in 2006 stands in stark contrast to its 2005 finding that "there is no evidence in the record" upon which such a conclusion could be based.

13

38.     Thus, the TTAB determined in the 2006 Opinion that the Examiner had made a *prima facie* case of unregisterability of Plaintiff's marks SQUAW and SQUAW ONE as used in connection with Classes 25 and 35 (apparel and retail store services) under § 1052(a), in direct contradiction to its 2005 Opinion that there is "no evidence in the record" to support such a finding, and held, contrary to its prior ruling, that Plaintiff had failed to rebut the evidence of disparagement.

39.     The TTAB's conclusions of law in the 2006 Opinion are erroneous, are based on factual findings that are clearly erroneous as they are admittedly supported by "no evidence," and are insufficient to warrant refusal of registration under Section 2(a), under any standard of review.

40.     The TTAB erred in inferring from a record admittedly comprised of "no evidence" the conclusion that Plaintiff's SQUAW and SQUAW ONE marks are disparaging with respect to a substantial composite of Native Americans.

41.     The TTAB erred by concluding that the term SQUAW is offensive "when used in connection with [Plaintiff's] identified goods and services in International Classes 25 and 35," in the absence of any supporting evidence. See Exhibit 17 attached hereto at page 41.

42.     The TTAB erred in basing its findings of fact not on evidence of record but on inference and speculation.

14

43.    The TTAB erred in disregarding the established alternative meaning associated with SQUAW, namely, as a shorthand reference to Plaintiff's world-famous ski resort, as the TTAB expressly found in its 2006 Opinion.

44.    Plaintiff's SQUAW and SQUAW ONE marks, as used in connection with Plaintiff's ski resort services and related goods and services, do not disparage Native Americans. To the contrary, Plaintiff's SQUAW and SQUAW ONE marks, when used in connection with ski resort services and related goods and services, are associated exclusively with Plaintiff and convey the rich history and prestige of Plaintiff's SQUAW VALLEY® ski resort.

45.    Plaintiff's SQUAW and SQUAW ONE marks, as used in connection with Plaintiff's identified goods and services, have developed a secondary meaning which refers only to Plaintiff.

46.    Plaintiff's SQUAW and SQUAW ONE marks do not disparage Native Americans because Plaintiff's marks have developed a secondary meaning in the context of ski resort services and related goods and services, and are inextricably associated with and linked to Plaintiff's legendary SQUAW VALLEY® ski resort.

47.    Plaintiff's SQUAW VALLEY® ski resort enjoys nationwide recognition.

48.    Plaintiff's SQUAW and SQUAW ONE marks are abbreviations and natural derivations of its famous SQUAW VALLEY® mark, and are used exclusively by Plaintiff in the context of Plaintiff's famous SQUAW VALLEY® ski resort and related goods and services.

49.    When used in connection with Plaintiff's ski resort services, Plaintiff's SQUAW and SQUAW ONE marks are associated exclusively with Plaintiff's SQUAW VALLEY® ski resort and related goods and services.

50.    Plaintiff has never engaged in behavior perceived as disparaging Native Americans.

51.    In failing to consider the context of Plaintiff's use of its SQUAW and SQUAW ONE marks in commerce in connection with goods in Class 25 and services in Class 35, and particularly their close link to and inextricable connection with Plaintiff's SQUAW VALLEY® ski resort, the TTAB erred as a matter of law and was arbitrary and capricious in denying Plaintiff's applications for those marks.

## COUNT I

### APPEAL FROM DECISION OF THE TRADEMARK
### TRIAL AND APPEAL BOARD PURSUANT TO 15 U.S.C. § 1071(b)

52.    Plaintiff repeats and realleges the allegations contained in Complaint paragraphs 1 through 51, inclusive, as though fully set forth herein.

53.    Contrary to the Examiner's arguments on reconsideration, there is no indication in the 2005 Opinion that the TTAB utilized the higher *inter partes* standard of proof in reaching its conclusion that there was "no evidence in the record" to support the conclusion that a substantial composite of Native Americans find Plaintiff's use of its marks on its identified goods and services disparaging, or that the TTAB examined the meager evidence proffered by the Examiner under any heightened scrutiny.  To the contrary, the TTAB correctly concluded that there was "no evidence" to satisfy the second prong of the *Harjo* test, a conclusion which would remain the same regardless of whether the higher *inter partes* standard or lower *ex parte* standard was applied.

54.    In its 2005 Opinion, the TTAB correctly applied the standard used in *ex parte* cases and correctly concluded that "no evidence" existed to support denial of Plaintiff's applications under Section 2(a).

55.    In the 2006 Opinion, the TTAB abandoned the *ex parte* standard used in the 2005 Opinion and created a new unspecified lower standard of proof, accepting the Examiner's meager evidence without regard to its lack of probative value or the Examiner's burden to make out a *prima facie* case of unregisterability.  The TTAB then "inferred" that a substantial composite of Native Americans would find use of Plaintiff's marks in connection with goods in Class 25 and services in Class 35 disparaging, a finding which is clearly not supported by any evidence in the record.

17

56.    The new standard used by the TTAB in the 2006 Opinion, which amounts to no standard of proof whatsoever, is arbitrary and capricious, as the TTAB's express finding of "no evidence of record" was magically transformed by the USPTO using an undefined and unspecified "lower" evidentiary standard into a *prima facie* case that Plaintiff's marks as used in connection with goods in Class 25 and services in Class 35 somehow will be considered disparaging to a substantial composite of Native Americans.

57.    The TTAB erred as a matter of law in its 2006 Opinion by failing to apply any standard of proof to the meager evidence proffered by the Examiner.

58.    The TTAB's application of an unspecified or "lower" standard of proof is a violation of Plaintiff's rights under the Due Process Clause of the Fifth and Fourteenth Amendments of the U.S. Constitution.

59.    The TTAB erred in its application of a lowered standard of proof to the Examiner's evidence for the registerability of Plaintiff's marks SQUAW and SQUAW ONE under § 1052(a), as the evidence submitted by the Examiner does not demonstrate under any standard of proof that a substantial composite of Native Americans find use of SQUAW in connection with Plaintiff's goods and services in Classes 25 and 35 to be disparaging or offensive, consistent with the TTAB's original findings in its 2005 Opinion.

60.    The TTAB erred in its determination that the likely meaning of Plaintiff's use of the marks SQUAW and SQUAW ONE in Class 25 (apparel) and Class 35 (retail store services)

18

is the dictionary definition rather than a reference to Plaintiff's famous SQUAW VALLEY®

resort. The TTAB ignored Plaintiff's established long-standing fame of its SQUAW VALLEY®

family of marks and the evidence of record which clearly demonstrates that SQUAW is

recognized as a shorthand reference for Plaintiff's famous ski resort and its related goods and

services, as well as the TTAB's own conclusion that there is an alternative meaning to the term

SQUAW, namely the SQUAW VALLEY® ski resort, rather than the meaning of a Native

American woman or wife. See Exhibit 17 attached hereto at page 5.


61.    Plaintiff seeks a *de novo* review of the TTAB's 2006 Opinion.


62.    Plaintiff has taken no appeal to the United States Court of Appeals for the Federal

Circuit of the 2006 Opinion.


## COUNT II

## REQUEST FOR DECLARATORY JUDGMENT

63.    Plaintiff repeats and realleges the allegations contained in Complaint paragraphs 1

through 62, inclusive, as though fully set forth herein.


64.    Plaintiff's SQUAW and SQUAW ONE marks, as used in connection with goods

and services in Classes 25 and 35, do not disparage Native Americans in violation of Section

2(a) of the Lanham Act, 15 U.S.C. § 1052(a).

65.    Plaintiff's SQUAW and SQUAW ONE marks, as used by Plaintiff in commerce, do not violate Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), in any respect.

WHEREFORE, Plaintiff Squaw Valley Development Company prays for the following relief:

(1)    That this Court reverse the Order of the Trademark Trial and Appeal Board dated May 30, 2006 refusing registration of Plaintiff's applied-for marks in Classes 25 and 35;

(2)    That the Commissioner of Trademarks be ordered to register Plaintiff's applications for SQUAW and SQUAW ONE in Classes 25 and 35;

(3)    That this Court declare that Plaintiff's SQUAW and SQUAW ONE marks, as used in connection with goods and services in Classes 25 and 35, do not disparage Native Americans, in violation of Section 2(a) of the Lanham Act, 15 U.S.C. § 1052(a), and that Plaintiff's use of its SQUAW and SQUAW ONE marks in commerce does not violate Section 2(a) in any respect; and

(4)    That Plaintiff be awarded such other and further relief as the Court may deem just and proper.

Dated: July 21, 2006                By:   _____

                                          Anne Stukes, Esq.
                                          WINSTON & STRAWN LLP
                                          1700 K Street, N.W.
                                          Washington, D.C. 20006-3817
                                          Telephone: (202) 282-5000
                                          Facsimile: (202) 282-5100

                                          Attorneys for Plaintiff
                                          Squaw Valley Development Company

Of Counsel:
Virginia R. Richard, Esq.
Lana C. Marina, Esq.
Sanjana Chopra, Esq.
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700