# EXHIBIT 7

**Please place on Upper Right Corner**
**of Response to Office Action ONLY.**

Examining Attorney: DE JONGE, KATHY

Serial Number: 76/511144

# UNITED STATES PATENT AN~~D~~

SERIAL NO: 76/511144

APPLICANT: Squaw Valley Development Company

NOV 18 2003

CORRESPONDENCE ADDRESS:
VIRGINIA R. RICHARD
WINSTON & STRAWN
200 PARK AVENUE
NEW YORK NEW YORK 10166

RETURN ADDRESS:
Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3514
ecom116@uspto.gov

MARK:    SQUAW

CORRESPONDENT'S REFERENCE/DOCKET NO:  N/A

CORRESPONDENT EMAIL ADDRESS:

Please provide in all correspondence:

1. Filing date, serial number, mark and applicant's name.
2. Date of this Office Action.
3. Examining Attorney's name and Law Office number.
4. Your telephone number and e-mail address.

# OFFICE ACTION

## TO AVOID ABANDONMENT, WE MUST RECEIVE A PROPER RESPONSE TO THIS OFFICE ACTION WITHIN 6 MONTHS OF OUR MAILING OR E-MAILING DATE.

RE: Serial Number  76/511144

The assigned examining attorney has reviewed the referenced application and determined the following.

### Refusal to Register – Disparaging Mark

The examining attorney refuses registration because the mark consists of or comprises matter which may disparage American Indians or bring them into contempt or disrepute.  Trademark Act Section 2(a), 15 U.S.C. §1052(a).  *See Greyhound Corp. v. Both Worlds Inc.*, 6 USPQ2d 1635 (TTAB 1988); *In re Anti-Communist World Freedom Congress, Inc.*, 161 USPQ 304 (TTAB 1969); TMEP §§1203.03, 1203.03(c) and 1203.03(d).

The applicant's mark is **SQUAW**.  "SQUAW" is an offensive or disparaging term for an American Indian woman.  The term "SQUAW" is defined as follows:

## squaw

squaw (skwô) *noun*
***Offensive.***
1.    A Native American woman, especially a wife.

**2.** A woman or wife.

[Massachusett *squa*, younger woman.][1]

The Online *Merriam-Webster Dictionary* defines "SQUAW" as follows (see attachments):

1 *often offensive*: an American Indian woman
2 *usually disparaging*: WOMAN, WIFE

The *Encyclopedia of North American Indians* states that "[b]y the twentieth century the word squaw had developed multiple **derogatory** associations that had no connection with the word's original meaning."[2] (see attachments).

The applicant's registrations for the marks **SQUAW VALLEY** and **SQUAW VALLEY USA** differ from the proposed mark **SQUAW** in that they are geographic designations. The primary significance of "SQUAW" alone is that of an offensive or disparaging term for an American Indian woman, rather than a geographic designation. Given that the primary meaning of the term "SQUAW" is disparaging to American Indians, registration is refused under Section 2(a) of the Trademark Act.

The applicant should also note the following additional ground for refusal.

**Refusal to Register – Likelihood of Confusion**
The examining attorney refuses registration under Trademark Act Section 2(d), 15 U.S.C. §1052(d), because the applicant's mark, when used on or in connection with the identified goods, so resembles the mark in U.S. Registration No. 2313003 as to be likely to cause confusion, to cause mistake, or to deceive. TMEP §§1207.01 *et seq.* See the attached registration.

The examining attorney must analyze each case in two steps to determine whether there is a likelihood of confusion. First, the examining attorney must look at the marks themselves for similarities in appearance, sound, connotation and commercial impression. *In re E. I. DuPont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563 (C.C.P.A. 1973). Second, the examining attorney must compare the goods or services to determine if they are related or if the activities surrounding their marketing are such that confusion as to origin is likely. *In re August Storck KG,* 218 USPQ 823 (TTAB 1983); *In re International Telephone and Telegraph Corp.*, 197 USPQ 910 (TTAB 1978); *Guardian Products Co., v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978). TMEP §§1207.01 *et seq.*

The applicant's mark is **SQUAW** for "men's, women's and children's clothing and accessories, namely, jackets, sweatshirts, sweaters, shirts, pants, bathrobes, t-shirts, gloves, head bands, vests, hats" (among other goods and services not at issue). The cited registration is for the mark **SQUAW CREEK** for "clothing, namely, socks, leotards, tights, thigh highs, over the knee hosiery."

---

[1] The American Heritage® Dictionary of the English Language, Third Edition copyright © 1992 by Houghton Mifflin Company. Electronic version licensed from INSO Corporation; further reproduction and distribution restricted in accordance with the Copyright Law of the United States. All rights reserved.
[2] http://college.hmco.com/history/readerscomp/naind/html/na_037100_squaw.htm

**Similarities Between the Marks**

Both marks share the term "SQUAW" The deletion of the term "CREEK" from the registrant's mark does not obviate the likelihood of confusion. Marks may be confusingly similar in appearance notwithstanding the addition, deletion or substitution of letters or words. *See, e.g., Weiss Assoc. Inc. v. HRL Assoc.*, 14 USPQ2d 1840 (Fed. Cir. 1990) (TMM held confusingly similar to TMS); *Gillette Canada Inc. v. Ranir Corp.*, 23 USPQ2d 1768 (TTAB 1992) (ORAL-ANGLE held likely to be confused with ORAL-B); *Jockey Int'l, Inc. v. Mallory & Church Corp.*, 25 USPQ2d 1233 (TTAB 1992) (ELAAN in stylized form held likely to be confused with ELANCE); *Crocker Nat'l Bank v. Canadian Imperial Bank of Commerce*, 228 USPQ 689 (TTAB 1986) (COMMCASH likely to be confused with COMMUNICASH); *In re Pellerin Milnor Corp.*, 221 USPQ 558 (TTAB 1983) (MILTRON likely to be confused with MILLTRONICS in stylized form); TMEP §1207(01)(b)(iii). The marks **SQUAW** and **SQUAW CREEK** confusingly similar in appearance, sound, connotation and commercial impression.

**Relationship Between the Goods**

The goods of the parties need not be identical or directly competitive to find a likelihood of confusion. They need only be related in some manner, or the conditions surrounding their marketing be such, that they could be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods come from a common source. *In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Corning Glass Works*, 229 USPQ 65 (TTAB 1985); *In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984); *Guardian Products Co., Inc. v. Scott Paper Co.*, 200 USPQ 738 (TTAB 1978); *In re International Telephone & Telegraph Corp.*, 197 USPQ 910 (TTAB 1978). TMEP §1207.01(a)(i).

The applicant's and registrant's goods are related in that they are items of clothing. The decisions in this field have held many different types of apparel related under Section 2(d). *Cambridge Rubber Co. v. Cluett, Peabody & Co., Inc.*, 286 F.2d 623, 128 USPQ 549 (C.C.P.A. 1961) ("WINTER CARNIVAL" for women's boots v. men's and boys' underwear); *Jockey International, Inc. v. Mallory & Church Corp.*, 25 USPQ2d 1233 (TTAB 1992) ("ELANCE" for underwear v. "ELAAN" for neckties); *In re Melville Corp.* 18 USPQ2d 1386 (TTAB 1991) ("ESSENTIALS" for women's pants, blouses, shorts and jackets v. women's shoes); *In re Pix of America, Inc.*, 225 USPQ 691 (TTAB 1985) ("NEWPORTS" for women's shoes v. "NEWPORT" for outer shirts); *In re Mercedes Slacks, Ltd.*, 213 USPQ 397 (TTAB 1982) ("OMEGA" for hosiery v. trousers); *In re Cook United, Inc.*, 185 USPQ 444 (TTAB 1985) ("GRANADA" for men's suits, coats, and trousers v. ladies' pantyhose and hosiery); *Esquire Sportswear Mfg. Co. v. Genesco Inc.*, 141 USPQ 400 (TTAB 1964) ("SLEEX" for brassieres and girdles v. slacks for men and young men).

As evidence that the applicant's and registrant's items of clothing may emanate from a single source, see the attached third-party registrations. The Trademark Trial and Appeal Board has held that third-party registrations, while not evidence of use of the marks shown therein in commerce, are adequate to suggest that the various items listed therein are of a type that may emanate from a single source. *See In re Albert Trostel & Sons Co.*, 29 USPQ2d 1783 (TTAB 1993); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467 (TTAB 1988).

The examining attorney must resolve any doubt regarding a likelihood of confusion in favor of the prior registrant. *In re Hyper Shoppes (Ohio), Inc.*, 837 F.2d 463, 6 USPQ2d 1025 (Fed. Cir., 1988). TMEP §§1207.01(d)(i). Given the similarities between the marks and the relationship

between the goods, there is a likelihood of confusion as to the source of the goods. Therefore, registration is refused.

**Ownership of the Cited Registration**
If the registered mark cited has been assigned to the applicant, the applicant is responsible for proving its ownership of that mark. TMEP §812.01. The applicant may record the assignment with the Assignment Branch of the Patent and Trademark Office. Trademark Act Section 10, 15 U.S.C. §1060; 37 C.F.R. §3.25. The applicant should then provide the examining attorney with the reel and frame numbers at which the assignment is recorded. In the alternative, the applicant may submit evidence of the assignment of the mark to the applicant. This evidence may consist of (1) documents evidencing the chain of title, or (2) an explanation, in an affidavit or supported by a declaration under 37 C.F.R. §2.20, of the chain of title (specifying each party in the chain, the nature of each conveyance and the relevant dates). 37 C.F.R. §3.73.

**Section 2(d) Refusal Pertains to Class 25 Only**
The stated Section 2(d) refusal refers to Class 25 only and does not bar registration in the other classes. The applicant may respond to the stated refusal by doing one of the following:

(1)    deleting the class to which the refusal pertains;

(2)    arguing against the refusal of the combined application as a whole;

(3)    filing a request to divide out the goods and/or services that have not been refused registration, so that the mark may be published for opposition in the classes to which the refusal does not pertain (See 37 C.F.R. §2.87 and TMEP §§1 110.05 and 1403.03 regarding the requirements for filing a request to divide); or

(4)    changing the basis, if appropriate (the basis may not be changed for applications filed under Trademark Act §66(a)).

Although the examining attorney has refused registration, the applicant may respond to the refusal to register by submitting evidence and arguments in support of registration. If the applicant chooses to respond to the refusal to register, the applicant must also respond to the following informalities.

**Amended Claim of Ownership Required**
If the applicant is the owner of Registration Nos. 0670261 and 1628589 (see attachments), the applicant must amend the claim of ownership to include these registrations. 37 C.F.R. §2.36; TMEP §812.

**Amended Identification of Goods and Services Required**
The identification of goods and services is acceptable as to Classes 25 and 35, but unacceptable as indefinite as to the wording "poles" and "ski tuning kits containing waxes and adjustment tools" in Class 28. The applicant must amend the identification to specify that the poles are *ski* poles and that the kits are *comprised of* waxes and adjustment tools. The applicant may adopt the following identification, if accurate (suggested changes in bold type):

Men's, women's and children's clothing and accessories, namely, jackets, sweatshirts, sweaters, shirts, pants, bathrobes, t-shirts, gloves, head bands, vests, hats (Class 25);

Skis, **ski** poles, ski bindings, ski tuning kits **comprised of** waxes and adjustment tools, ski equipment, namely power cords (Class 28);

Retail store services in the field of sporting goods and equipment, apparel for men, women and children, footwear, headgear and related goods and services (Class 35).

TMEP §1402.01.

Please note that, while an application may be amended to clarify or limit the identification, additions to the identification are not permitted. 37 C.F.R. §2.71(a); TMEP §1402.06. Therefore, the applicant may not amend to include any goods or services that are not within the scope of the goods and services recited in the present identification.

**Substitute Class 35 Specimen Required**
The specimens are acceptable for the goods, but are unacceptable for the Class 35 services. The Class 35 specimen, a photograph of a building with a sign reading "SQUAW," is unacceptable because it does not show use of the mark for any of the Class 35 services identified in the application. A service mark specimen is unacceptable if it does not show use of the service mark in relation to the identified services. *Intermed Communications, Inc. v. Chaney,* 197 USPQ 501 (TTAB 1977). The specimen must show use of the mark "in the sale or advertising of [the] services." Trademark Act Section 45, 15 U.S.C. §1127; *In re Universal Oil Products Co.,* 476 F.2d 653, 177 USPQ 456 (C.C.P.A. 1973); TMEP §§1301.04 *et seq.* Therefore, the specimen must show the mark in reference to the particular services identified.

The applicant must submit a substitute specimen showing use of the mark for the Class 35 services specified. 37 C.F.R. §2.56; TMEP §904. Examples of acceptable specimens are signs, photographs, brochures or advertisements that show the mark used in the sale or advertising of the services. TMEP §§1301.04 *et seq.* The applicant must verify, with an affidavit or a declaration under 37 C.F.R. §2.20, that the substitute specimen was in use in commerce at least as early as the filing date of the application. 37 C.F.R. §2.59(a); TMEP §904.09.

**Drawings Rules Changed**
PLEASE NOTE: The Trademark Rules pertaining to drawings were amended on November 2, 2003. For applications filed prior to November 2, 2003, applicants may follow either the new standard character drawing rules or the typed drawing rules in force prior to their amendment on November 2, 2003. Exam Guide 01-03, section I.A.9.

**Fee Increase**
PLEASE NOTE: Effective January 1, 2003, the fee for filing an application for trademark registration will be increased to **$335.00** per International Class. The USPTO will not accord a filing date to applications that are filed on or after that date that are not accompanied by a minimum of $335.00.



Additionally, the fee for amending an existing application to add an additional class or classes of goods/services will be $335.00 per class for classes added on or after January 1, 2003.

**Response Guidelines**
No set form is required for response to this Office action. The applicant must respond to each point raised. The applicant should simply set forth the required changes or statements and request that the Office enter them. The applicant must sign the response. Electronically-filed responses must include a valid electronic signature. The Office will accept any combination of letters, numbers, spaces and/or punctuation marks placed between two forward slash ("/") symbols as an electronic signature. 37 C.F.R. §§1.4(d)(1)(iii) and 2.33(d); TMEP §§304.08 and 804.05.

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.

/Kathleen de Jonge/
Examining Attorney, Law Office 116
(703) 306-7916
(703) 746-8116 (fax)
ecom116@USPTO.gov (formal responses)

**How to respond to this Office Action:**

To respond formally using the Office's Trademark Electronic Application System (TEAS), visit **http://www.uspto.gov/teas/index.html** and follow the instructions.

To respond formally via E-mail, visit **http://www.uspto.gov/web/trademarks/tmelecresp.htm** and follow the instructions.

To respond formally via regular mail, your response should be sent to the mailing Return Address listed above and include the serial number, law office and examining attorney's name on the upper right corner of each page of your response.

To check the status of your application at any time, visit the Office's Trademark Applications and Registrations Retrieval (TARR) system at **http://tarr.uspto.gov/**

For general and other useful information about trademarks, you are encouraged to visit the Office's web site at **http://www.uspto.gov/main/trademarks.htm**

**FOR INQUIRIES OR QUESTIONS ABOUT THIS OFFICE ACTION, PLEASE CONTACT THE ASSIGNED EXAMINING ATTORNEY.**

**DOCKETED**

Dated_____

Serial Number 76511144Attachment # — squaw encyclopedia of north american indians          Page 1 Of 1



# Encyclopedia of North American Indians

## Squaw

The literal meaning of the word *squaw* is obscure, and its connotations have changed over time. Its origins are found among the northeastern tribes. In Massachusett, *squà* referred to a younger woman. In Narragansett, *sunksquaw* meant "queen" or "lady." Despite these Algonquian-language origins, however, nonnatives applied the term to native women throughout North America. Over time it took on derogatory connotations as travelers referred to native women as *squaw drudges* and often used the term in opposition to *Indian princess*. Nonnatives often referred to women leaders as *squaw sachems* and nonnative men who married native women as *squaw men*. By the twentieth century the word *squaw* had developed multiple derogatory associations that had no connection with the word's original meaning.

See also Women.



**Print: Nov 12, 2003**                    **75115370**

**TYPED DRAWING**

**Serial Number**
75115370

**Status**
SECTION 8 & 15-ACCEPTED AND ACKNOWLEDGED

**Word Mark**
SQUAW CREEK

**Registration Number**
2049234

**Date Registered**
1997/04/01

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
DML MARKETING ROUPO, LTD. CORPORATION CALIFORNIA 12701 ENCINITAS
AVENUE SYLMAR CALIFORNIA 91342

**Name Change**
BY ASSIGNMENT

**Original Owner**
DML MARKETING GROUP, INC. CORPORATION Sylmar CALIFORNIA 91342

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: clothing,
namely, socks, leotards, tights, thigh highs, over the knee hosiery.
First Use: 1996/04/08.  First Use In Commerce: 1996/04/08.

**Filing Date**
1996/06/06

**Examining Attorney**
UNKNOWN

**Attorney of Record**
NEILL A. LEVY

Serial Number 76511144    chment # 4 71692307p001of002    Page 1 Of 1

**Print: Nov 12, 2003**    **71692307**

**DESIGN MARK**

**Serial Number**
71692307

**Status**
REGISTERED AND RENEWED

**Word Mark**
SQUAW VALLEY

**Registration Number**
0670261

**Date Registered**
1958/11/25

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(5) WORDS, LETTERS, AND/OR NUMBERS IN STYLIZED FORM

**Owner**
SQUAW VALLEY DEVELOPMENT COMPANY CORPORATION NEVADA 1960 SQUAW VALLEY
ROAD OLYMPIC VALLEY CALIFORNIA 96146

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  039.  G & S: WOMEN'S, MEN'S,
GIRLS', AND BOYS' JACKETS, PANTS, AND SWEATERS.  First Use:
1955/06/20.  First Use In Commerce: 1955/06/20.

**Filing Date**
1955/08/02

**Examining Attorney**
UNKNOWN

**Attorney of Record**
VIRGINIA R RICHARD

Serial Number 76511144    Attachment # 5 71692307p002of002     Page 1 Of 1

# SQUAW VALLEY

Serial Number 76511144                Attachment # 6 73828303p001of002 ⬤                Page 1 Of 1

**Print: Nov 12, 2003**                          **73828303**


**TYPED DRAWING**

**Serial Number**
73828303

**Status**
REGISTERED AND RENEWED

**Word Mark**
SQUAW VALLEY USA

**Registration Number**
1628589

**Date Registered**
1990/12/18

**Type of Mark**
SERVICE MARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
SQUAW VALLEY DEVELOPMENT COMPANY CORPORATION NEVADA P.O. BOX 2007
OLYMPIC VALLEY CALIFORNIA 95730

**Goods/Services**
Class Status -- ACTIVE. IC 042. US 100 101. G & S: HOTEL,
RESTAURANT AND LOUNGE SERVICES [ ; RETAIL GROCERY SERVICES ]. First
Use: 1972/00/00. First Use In Commerce: 1972/00/00.

**Goods/Services**
Class Status -- ACTIVE. IC 041. US 107. G & S: PROVIDING
RECREATIONAL FACILITIES FOR AND INSTRUCTIONS IN SKIING, GOLF, TENNIS,
SWIMMING, OPERATING A SKI LIFT, AEROBICS AND OTHER FORMS OF EXERCISE.
First Use: 1972/00/00. First Use In Commerce: 1972/00/00.

**Goods/Services**
Class Status -- ACTIVE. IC 036. US 101 102. G & S: REAL ESTATE
MANAGEMENT. First Use: 1972/00/00. First Use In Commerce:
1972/00/00.

**Goods/Services**
Class Status -- ACTIVE. IC 039. US 100 105. G & S: [ LIMOUSINE, ]
BUS AND TRANSPORTATION SERVICES. First Use: 1972/00/00. First Use In
Commerce: 1972/00/00.

Serial Number 76511144          Attachment # 7 73828303p002of002          Page 1 Of 1

**Print: Nov 12, 2003**                    **73828303**

**Section 2f Statement**
2(F) ENTIRE MARK

**Filing Date**
1989/09/28

**Examining Attorney**
RUPP, TERESA M.

**Attorney of Record**
VIRGINIA R. RICHARD

**Print: Nov 12, 2003**                    **75884187**

## DESIGN MARK

**Serial Number**
75884187

**Status**
REGISTERED

**Word Mark**
LISA KLINE

**Registration Number**
2442393

**Date Registered**
2001/04/10

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
Lisa Kline, Inc. CORPORATION CALIFORNIA 123 South Robertson Ave. SUITE
B Los Angeles CALIFORNIA 90048

**Goods/Services**
Class Status -- ACTIVE. IC 025. US 022 039. G & S: Clothing,
namely tops, tank tops, blouses, shirts, t-shirts, sweatshirts,
cardigans, sweaters, blazers, jackets, coats, vests, bottoms, pants,
trousers, jeans, sweatpants, leggings, shorts, skorts, jumpsuits,
overalls, skirts, dresses, jumpers, unitards, lingerie, leotards,
tights, bras, underwear, sleepwear, sleep shirts, pajamas, robes,
nightgowns, footwear, shoes, boots, sandals, slippers, slipper socks,
socks, hosiery, bandannas, neckties, scarves, neckerchiefs,
handkerchiefs, mufflers, caps and hats, headbands, gloves, belts,
suspenders, boxer shorts. First Use: 1995/08/05. First Use In
Commerce: 1995/09/00.

**Name/Portrait Statement**
THE NAME "LISA KLINE" IN THE MARK IS THE NAME OF A PARTICULAR LIVING
INDIVIDUAL WHOSE CONSENT IS OF RECORD.

**Filing Date**
1999/12/30

**Examining Attorney**

**Print: Nov 12, 2003**                          **75884187**

CAPSHAW, DANIEL

**Attorney of Record**
MIRIAM CLAIRE BEEZY

# LISA KLINE

**Print: Nov 12, 2003**                    **78144600**

**DESIGN MARK**

**Serial Number**
78144600

**Status**
REGISTERED

**Word Mark**
ESCAPADES

**Registration Number**
2727265

**Date Registered**
2003/06/17

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(3)  DESIGN PLUS WORDS, LETTERS AND/OR NUMBERS

**Owner**
LADY ESTER LINGERIE CORPORATION CORPORATION NEW YORK 16 East 34th St.
New York NEW YORK 10016

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: Lingerie, bras,
underwear, girdles, slips, camisoles, tank tops, slippers, pant
liners, bodysuits, shirts, blouses, T-shirts, tights, sweatshirts,
sweatpant, pants, pantsuits, jackets, vests, sweaters, coats, skirts,
dresses, jeans, scarves, gloves, suits, jogging suits, jogging shorts,
leggings, socks, hosiery, leotards, crop tops, robes and sleepwear.
First Use: 1987/05/01.  First Use In Commerce: 1988/01/12.

**Prior Registration(s)**
1472399

**Filing Date**
2002/07/17

**Examining Attorney**
SHANAHAN, WILLIAM P.





**Print: Nov 12, 2003**                    **78144916**

**TYPED DRAWING**

**Serial Number**
78144916

**Status**
REGISTERED

**Word Mark**
GENUINE KIDS FROM OSHKOSH

**Registration Number**
2783307

**Date Registered**
2003/11/11

**Type of Mark**
TRADEMARK

**Register**
PRINCIPAL

**Mark Drawing Code**
(1) TYPED DRAWING

**Owner**
OshKosh B'Gosh, Inc. CORPORATION DELAWARE P.O. Box 300 Oshkosh
WISCONSIN 549030300

**Goods/Services**
Class Status -- ACTIVE.  IC 025.  US  022 039.  G & S: clothing,
namely bib overalls, jumpers, shortalls, shorts, bike shorts, skirts,
skorts, dresses, pants, bottoms, shirts, blouses, tops, tops with
hoods, tank tops, sweaters, sweatshirts, outerwear, namely vests,
coats, and jackets, swimwear, sleepwear, pajamas, footwear, namely
boots, shoes, and sandals, hosiery, namely socks, tights, and
leggings, underwear, layette, headwear, namely hats, caps, visors, and
headbands, handwear, namely mittens and gloves, belts and suspenders.
First Use: 2003/06/25.  First Use In Commerce: 2003/06/25.

**Prior Registration(s)**
0511479;0511480;1133127;1232852;1498723;1556949;1559976;1561067;1561086-
;1588981;1981387;1984438;1985979;2032487;2112584;2168143;2217577;241763-
3;2450826;2481785;2504676;2575818;AND OTHERS

**Disclaimer Statement**
NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "KIDS" APART FROM THE
MARK AS SHOWN.

**Section 2f Statement**

Serial Number 76511144          Attachment # 14 78144916p002of002          Page 1 Of 1

**Print: Nov 12, 2003**                    **78144916**

As to Oshkosh

**Filing Date**
2002/07/17

**Examining Attorney**
PERRY, KIMBERLY

**Attorney of Record**
Robert L. Titley