# EXHIBIT 16

# IN THE UNITED STATES PATENT AND TRADEMARK OFFICE
# BEFORE THE TRADEMARK TRIAL AND APPEAL BOARD

Applicant:         Squaw Valley Development Company

Serial Nos.:       76/511,144 and 76/511,145

Marks:             SQUAW and SQUAW ONE

Filing Date:       May 2, 2003

**TTAB**

Commissioner for Trademarks
**BOX TTAB**
P.O. Box 1451
Alexandria, Virginia 22313-1451

## APPLICANT'S RESPONSE TO THE REQUEST FOR RECONSIDERATION
## OF DECISION ON EX PARTE APPEAL

Applicant Squaw Valley Development Company ("Applicant") submits this brief in opposition to the Request for Reconsideration of Decision on Ex Parte Appeal filed by the Trademark Senior Attorney on October 25, 2005. The Request for Reconsideration of Decision on Ex Parte Appeal should be denied for the reasons discussed below.

I.    **DISCUSSION**

The Trademark Senior Attorney bears a heavy burden on a request for reconsideration. Federal Courts have held that "[r]econsideration of a previous order is an extraordinary measure and should be applied sparingly in the interests of finality and conservation of scarce judicial resources." See e.g., Pennsylvania Ins. Guar. Ass'n v. Trabosh, 812 F. Supp. 522 (E.D.Pa. 1992) (denying request for reconsideration). Courts have recognized three grounds justifying reconsideration: (1) newly discovered evidence; (2) manifest error of fact; and (3) manifest error of law. See Franco v. Unified School District No. 437, 2002 WL 1162488, *3 (D.Kan. May 17, 2002) (denying request for reconsideration). A request for reconsideration cannot be used to

11-14-2005
U.S. Patent & TMOfc/TM Mail Rcpt Dt. #22

raise new arguments, introduce additional evidence, or reargue the points previously presented. See Pick v. American Medical System, Inc., 1997 WL 162061, *1 (E.D.La. April 3, 1997) (finding that magistrate's refusal to reconsider his previous ruling was not an abuse of discretion); Prudential Securities, Inc. v. Emerson, 919 F. Supp. 415, 417 (M.D.Fla. 1996) (denying motion for rehearing); In re Ferrellgas, L.P., 2004 WL 161344, *1 (T.T.A.B. January 22, 2004) (denying request for reconsideration after finding that trademark examining attorney's request for reconsideration was primarily re-argument of points made in his original brief and that he failed to explain how decision was erroneous).

### A.     THERE IS NO MANIFEST ERROR OF LAW

The Trademark Senior Attorney does not argue that there is new evidence or a manifest error of fact, instead the Trademark Senior Attorney claims that the Board made a manifest error of law in applying the test for disparagement mandated by Pro-Football, Inc. v. Harjo, 284 F. Supp. 2d 96 (D. D. C. 2003) (reversing T.T.A.B.'s cancellation of registrations for marks containing the term "Redskins" because the Board's findings were not supported by substantial evidence) ("Harjo II"). The Trademark Senior Attorney claims that the Harjo test does not require a showing that the marks at issue are disparaging to a substantial composite of the referenced group *in connection with the goods and services set forth in the applications.* (Brief, p. 5) (emphasis added). The Trademark Senior Attorney is wrong.

The Board in Harjo v. Pro-Football Inc., 50 U.S.P.Q.2d 1705 (T.T.A.B. 1999) ("Harjo I"), stated that evidence that a substantial composite of the referenced group find the mark disparaging *in connection with the identified goods and services* must be submitted and considered on the question of disparagement:

- "As with most trademark issues, including scandalousness, the question of disparagement must be considered *in relation to the goods or services identified by the mark* in the context of the marketplace." Harjo I, 50 U.S.P.Q.2d at 1738. (emphasis added).

- "The remaining question in relation to disparagement is whether the word 'redskin(s)' may be disparaging of and to Native Americans, as that word appears in the marks in the subject registrations, *in connection with the identified services*, and during the relevant time periods." Harjo I, 50 U.S.P.Q.2d at 1743. (emphasis added).

- "We find petitioners have clearly established, by at least a preponderance of the evidence, that, as of the dates the challenged registrations issued, the word 'redskin(s),' as it appears in respondent's marks in those registrations and *as used in connection with the identified services*, may disparage Native Americans, as perceived by a substantial composite of Native Americans." Harjo I, 50 U.S.P.Q.2d at 1743. (emphasis added).

- Regarding the views of Native Americans in particular, the record contains the testimony of petitioners themselves stating that they have been seriously offended by respondent's use of the word 'redskin(s)' as part of its marks *in connection with its identified services*." Harjo I, 50 U.S.P.Q.2d at 1747. (emphasis added).

- "We find that the evidence, as discussed above, does establish that, during the relevant time periods, a substantial composite of the general population would find the word 'redskin(s),' as it appears in the marks herein *in connection with the identified services*, to be a derogatory term of reference for Native Americans." Harjo I, 50 U.S.P.Q.2d at 1748. (original emphasis omitted). (emphasis added).

The District Court in Harjo II approved the Board's statement of the test for disparagement, but repeatedly faulted the Board for finding disparagement in the absence of evidence that a substantial composite of the referenced group found the mark disparaging *in connection with the identified goods and services*:

- "Most importantly, the TTAB pointed out that 'the question of disparagement must be considered *in relation to the goods or services identified by the mark* in the context of the marketplace.'" Harjo II, 284 F. Supp. 2d at 125, quoting Harjo I at 1738. (emphasis added).

- "[T]he ultimate legal inquiry is whether the six trademarks at issue may disparage Native Americans when used *in connection with Pro-Football's services* and during the relevant time frame." Harjo II, 284 F. Supp. 2d at 131. (emphasis added).

- The crux of the TTAB's conclusion, therefore, is that the 'derogatory connotation of the word 'redskin(s)'' extends to the term 'Redskin(s)' as used *in connection*

3

*with Pro-Football's entertainment services.* This finding is not supported by substantial evidence." Harjo II, 284 F. Supp. 2d at 133. (emphasis added).

- "Clearly, the evidence relating to the media and fans has no bearing on whether a substantial composite of Native Americans finds the term 'redskin(s)' to be disparaging when *used in connection with Pro-Football's marks.* In this regard, the evidence the TTAB put forward comes nowhere close to meeting the substantial evidence test." Harjo II, 284 F. Supp. 2d at 134-35. (emphasis added).

The Trademark Senior Attorney urges the Board to adopt a "new" test pursuant to which disparagement would be determined in a vacuum without reference to the goods or services involved or the perceptions of the referenced group with respect to those goods or services. The Board correctly applied the test for disparagement approved in Harjo II and required a showing that a substantial composite of Native Americans find Applicant's use of the applied-for marks *in connection with the identified goods and services* disparaging, a showing the Examining Attorney failed to make. Accordingly, the Trademark Senior Attorney has failed to establish a manifest error of law. The request for reconsideration should be denied.

B. **THE EXAMINING ATTORNEY DID NOT ESTABLISH THAT A SUBSTANTIAL COMPOSITE OF THE REFERENCED GROUP CONSIDERS USE OF THE APPLIED-FOR MARKS IN CONNECTION WITH THE IDENTIFIED GOODS AND SERVICES DISPARAGING**

The Trademark Senior Attorney also claims that the Board's decision is erroneous because the Examining Attorney established that the marks at issue are disparaging to a substantial composite of the referenced group in connection with the goods and services set forth in the applications. (Brief, pp. 3, 5). In fact, as the Board found, the Examining Attorney offered no evidence which demonstrated that a substantial composite of Native Americans find Applicant's use of the applied-for marks in connection with the identified goods and services disparaging. (Decision, pp. 29-30). The Examining Attorney failed to offer any evidence

4

whatsoever concerning the views of the referenced group with respect to use of the applied-for marks in connection with the goods and services identified in the Application. The Examining Attorney failed to meet the requirements of the Harjo test and there is no basis to reconsider the Board's determination.

### C. THERE IS NO BASIS TO RECONSIDER THE BOARD'S DECISION WITH RESPECT TO CLASS 28

The Trademark Senior Attorney's claim that the Board's decision with respect to Class 28 is erroneous is nothing more than a reargument of the facts. (Brief, p. 12). The Trademark Senior Attorney provides no basis for the requested reconsideration of the Board's finding with respect to Class 28 other than an unsupported assertion that Applicant has not sustained its burden of proving that consumers would perceive use of the applied-for marks on the Class 28 goods as referring to Applicant as opposed to the dictionary meaning of the term. (Id.). The Board has determined that the meaning of the term "SQUAW" in connection with the goods identified in Class 28 is Applicant's Squaw Valley resort. (Decision, p. 20). The Trademark Senior Attorney has presented no new evidence, no manifest error of fact or manifest error of law with respect to this determination. A request for reconsideration should not be used to reargue the case. See In re Ferrellgas, L.P., 2004 WL 161344 at *1. Accordingly, the Board's decision with respect to Class 28 should stand.

### D. PUBLICATION OF THE APPLIED-FOR MARKS IS WARRANTED

The U.S.P.T.O. bears the burden of proving that a mark is disparaging. Doubts on the issue of whether a mark is disparaging are resolved in favor of the applicant. See In re Mavety Media Group Ltd., 33 F.3d 1367, 1371 (Fed. Cir. 1994) (vacating T.T.A.B. refusal to register

mark BLACK TAIL for an adult entertainment magazine and holding that P.T.O. failed to meet its burden of proving that mark was within the scope of statutory prohibition against registration of immoral or scandalous marks); In re In Over Our Heads Inc., 16 U.S.P.Q.2d 1653, 1654-55 (T.T.A.B. 1990) (reversing refusal of registration of the mark MOONIES & design for dolls under § 2(a)). Both the Federal Circuit and Board have previously supported the practice of passing a mark for publication and allowing any person(s) that finds such mark scandalous or disparaging the opportunity to oppose registration. See Mavety, 33 F.3d at 1374; In re Richard M. Hines, 32 U.S.P.Q.2d 1376, 1377 (T.T.A.B. 1994) (reversing prior decision affirming refusal of registration and passing applied-for mark to publication).

In the present instance, the Board properly concluded, contrary to the Trademark Senior Attorney's claims, that the Examining Attorney failed to make a *prima facie* case under the proper application of the Harjo test. If Native Americans view the applied-for marks as disparaging, as alleged by the Trademark Senior Attorney, they will have an opportunity to oppose registration.

## II.  CONCLUSION

For the foregoing reasons, Applicant respectfully requests that the Request for Reconsideration of Decision on Ex Parte Appeal be denied, that the Board's September 26, 2005 decision be affirmed and that Application Serial Nos. 76/511,144 and 76/511,145 be published for opposition in the Trademark Official Gazette.

Respectfully submitted,

Dated: New York, New York  
November 11, 2005

By: _____  
Virginia R. Richard, Esq.  
Lana C. Marina, Esq.  
Matthew A. Pater, Esq.

6

WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
(212) 294-6700

Attorneys for Applicant
SQUAW VALLEY DEVELOPMENT
COMPANY

"EXPRESS MAIL" mailing label number EL889958319US

Date of Deposit November 14, 2005
I hereby swear that this paper or fee is being deposited with the United States Postal Service "Express Mail Post Office to Addressee" service under 37 C.F.R. 1.10 on the date indicated above and is addressed to the Commissioner for Trademarks, P.O. Box 1451, Alexandria, VA 22313-1451.

Denise Bolden

_[signature]_
Signature